## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| KRASIMIR DACHEV, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 17-cv-5729 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| RICH AMERICA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion to dismiss [38] filed by Defendants Rich America, Inc. and Leonard Goodrum (referred to herein as "Defendants").[1]  For the reasons set forth below, the motion [38] is granted in part and denied in part.  Plaintiffs are given until March 1, 2019 to file a second amended complaint, if they so choose.  Status hearing set for March 6, 2015 at 9:00 a.m.

## I.    Background[2]

Peace for You Peace for Me (the "Foundation") is a private non-profit foundation registered under Bulgarian law, with its principal place of business is Sofia, Bulgaria.  [35 (Am. Compl.), at ¶ 2.]  The Foundation was formed to organize and hold a charity concert to help homeless and displaced children in world conflict zones.  [*Id*.]  Plaintiff Krasimir Dachev is a resident of Sofia, Bulgaria and was a sponsor of the Foundation.  [*Id*. at ¶ 3.]  Plaintiff Svilosa is a publicly-traded company organized under the laws of Bulgaria and listed on the Bulgarian Stock

---

[1] Plaintiffs also bring claims against Brandon Allen.  However, the Court entered an order of default against Allen on October 10, 2017 [22] and Allen has not taken any action in this Court.

[2] For purposes of this motion to dismiss, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor.  *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Exchange. [*Id.* at ¶ 4.] Svilosa was the primary investor in the Foundation and the planned charity concert. [*Id.*]

In early 2016, Dachev and Svilosa decided to help organize an all-day charity concert, patterned after the 1985 Live Aid concert and the 2010 Hope for Haiti Now concert, that would be internationally televised on October 1, 2016. [*Id.* at ¶ 14.] Plaintiffs allege that Defendants—in discussions with an agent and representative of the Foundation Krassimire Kourtev—agreed to secure the performances "of various preferred artists" for the charity concert, which originally was scheduled for October 2016. [*Id.* at ¶ 16.] Dachev and Svilosa agreed to loan the Foundation most, if not all, of the money necessary to secure artists. [*Id.*] Plaintiffs allege that it was understood "that their loans would be paid back with the proceeds generated by the ticket sales for admission to the charity concert" and that "any money sent to Defendants to secure an artist who declined the offer, or who otherwise could not be secured to perform, would be returned to Plaintiffs." [*Id.*] Plaintiffs also allege that "Defendants agreed to act as Plaintiffs' agent and use the money provided by Plaintiffs to secure Plaintiffs' preferred artists." [*Id.*]

Around August 2016, Defendant Brandon Allen—an officer and/or representative of Defendant Rich America, Inc. ("RA")—wrote to Kourtev representing that RA, "in coordination with RCA Records ("RCA") & Sony Music Group ("Sony")," would contact various celebrities to "secure performance contracts" for the charity concert, then less than two months away. [*Id.* at ¶ 17.] Plaintiffs allege that in reliance on that representation, "the Foundation, Dachev and Svilosa entered into a loan agreement, whereby Dachev and Svilosa agreed to loan the Foundation monies to be provided to RA for the purpose of securing artists to perform at the charity event." [*Id.* at ¶ 18.] The loan funds, which the Foundation agreed to repay, were provided directly to RA. [*Id.*]

Defendants sent various written agreements to Plaintiffs purporting to book various celebrities, including Britney Spears and Snoop Dogg.[3] [*Id*. at ¶ 19.] In these written agreements, Allen represented that he was the "agent" of the artist subject to the agreement. [*Id*.] The agreements required that deposits ($142,800 for Britney Spears and $150,000 for Snoop Dogg) immediately be paid to Defendants to "secure the date." [*Id*.] Plaintiffs allege that when the parties entered the written agreements, Defendants knew that payments to the artists would be provided as loans by Dachev and Svilosa and that the loans were to be paid back with the proceeds of the charity event. [*Id*. at ¶ 20.] Plaintiffs further allege that "Defendants and the Foundation intended for Dachev and Svilosa to benefit from, and be third-party beneficiaries to, the Artist Agreements." [*Id*.] Defendants transmitted to Plaintiffs video recordings of celebrities purporting to commit to the 2016 concert. [*Id*. at ¶ 21.] In one such video, an individual purporting to be Snoop Dogg says to "get ready" for the October 1, 2016 concert. [*Id*.] In August and September 2016, the Foundation, Dachev, and Svilosa collectively sent Defendants a total of $367,800 to "secure" these celebrities for the event. [*Id*. at ¶ 22.]

After receiving Plaintiffs' money, Defendants failed to secure any major celebrity for the 2016 concert, claiming, among other things, that Snoop Dogg "backed out" of the event and that the deposit money Plaintiffs paid to "secure" Britney Spears had instead been paid to "Natalie LaRose," an artist Plaintiffs did not authorize or want. [*Id*. at ¶ 23.] Plaintiffs had to cancel the 2016 concert because Defendants had not secured the promised celebrities. [*Id*.] Still, Plaintiffs asked that Defendants apply the money they already had paid to RA to secure artists for another concert to be held in June 2017. From September 2016 through April 2017, Defendants

---

[3] Although Plaintiffs attach the agreements purporting to relate to Brittany Spears and Snoop Dogg to their amended complaint, Plaintiffs do not attach any other agreements. It therefore is not clear to the Court whether there are other such signed agreements relating to other celebrities.

represented that they were negotiating with celebrities for the 2017 concert. During that time, Defendants sent Plaintiffs emails with the following statements:

- "We are happy to announce verbal confirmations from JLo, Jessica Simpson, Rihanna, Beyoncé, Diana Ross, Ludacris, Smiley, Mohombi, Iggy Azalea and David Guetta."

- "The contract [with Natalie LaRose] is signed and cannot be canceled[.]"[4]

- "We are still in the process of retrieving the Snoop Dogg deposit which will take some time but we are still debating keeping him for the show."

[*Id*. at ¶ 24.] From at least December 2016, Plaintiffs repeatedly asked Defendants for an accounting of the money they had received for the purpose of booking celebrities. [*Id*. at ¶ 25.] Defendants ignored these requests. [*Id*.]

By February 2017, after 6 additional months of alleged booking efforts, Defendants failed to secure any major celebrity for the 2017 concert. [*Id*.] Plaintiffs subsequently discovered that (1) Defendants were not authorized to represent or act on behalf of Sony or RCA in this matter; (2) Defendants were not authorized to represent or act on behalf of any of the major celebrities promised by Defendants (including Britney Spears and Snoop Dogg); (3) the major celebrities promised by Defendants (including Britney Spears and Snoop Dogg and their representatives) had never received any deposit from Defendants, had never entered into any agreement with Defendants, and had never heard of Defendants; and (4) the video recording sent to Plaintiffs of Snoop Dogg supposedly announcing his performance at the 2016 concert was a fraudulent production featuring a celebrity look-alike claiming to be Snoop Dogg. [*Id*. at ¶ 26.]

Plaintiffs bring this lawsuit against Defendants to recover more than $3,800,000 in damages allegedly incurred as a result of Defendants' misconduct. [*Id*. at ¶ 29.] Specifically,

---

[4] Plaintiffs allege that they never signed any agreement relating to Natalie LaRose. [*Id*. at ¶ 24.]

Plaintiffs seek to recover (a) approximately $350,000 tendered to Defendants; (b) deposits and/or payments for artists, hosts, hotels, airfare, stage and lighting vendors and other service provider contracts for the planned 2016 concert totaling another $2,500,000; and (c) another $1,000,000 of payment obligations under various contracts. [*Id.*] Before the Court is Defendants' motion to dismiss Plaintiffs amended complaint under Federal Rule of Civil Procedure 12(b)(1) and (6).

## II.     Legal Standard

The standard that the Court applies to a Federal Rule of Civil Procedure ("Rule") 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on the purpose of the motion. See *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (*en banc*), overruled on other grounds by *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction, the Court accepts all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See *Apex Digital*, 572 F.3d at 443-44; *United Phosphorus*, 322 F.3d at 946. In ruling on the motion, the district court also may look beyond the jurisdictional allegations alleged in the complaint and take into consideration whatever evidence has been submitted on the issue to determine if subject matter jurisdiction exists. *Cty. of Cook v. HSBC N. Am. Holdings Inc.*, 136 F.Supp.3d 952, 958 (N.D. Ill. 2015). The burden is on the party asserting that jurisdiction exists— here, Plaintiffs. *Id.*; see also *Gonzalez v. Bank of Am., N.A.*, 2014 WL 26283, at *2 (N.D. Ill. Jan. 2, 2014) ("the plaintiff bears the burden of establishing the basis for the court's jurisdiction").

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such

that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

## III. Analysis

### A. Standing

Defendants move to dismiss the claims of Plaintiffs Dachev and Svilosa for lack of standing under Rule 12(b)(1). Defendants argue that Plaintiffs Dachev and Svilosa lack both Article III standing and prudential standing to pursue their claims against Defendants. Article III "standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (quoting *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988) (internal quotation marks omitted)); see also *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017) ("Article III of the Constitution limits our review to actual 'Cases' and 'Controversies' brought by litigants who

demonstrate standing."). The Court therefore begins by addressing whether Dachev and Svilosa lack Article III standing.

For case-or-controversy standing under Article III, a plaintiff must allege: (1) an injury in-fact; (2) fairly traceable to the defendant's action; that is (3) capable of being redressed by a favorable decision from the court. *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 514 (7th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). As the Seventh Circuit has noted, "the Article III standing requirements are rather 'undemanding.'" *Family & Children's Ctr., Inc. v. Sch. City of Mishawaka*, 13 F.3d 1052, 1058 (7th Cir. 1994) (quoting *North Shore Gas Co. v. E.P.A.*, 930 F.2d 1239, 1242 (7th Cir. 1991)). Defendants argue that Dachev and Svilosa have not sufficiently alleged an injury-in-fact sufficient to establish Article III standing.

Although the parties do not take head on the issue of Article III standing,[5] the Court has an obligation independently to determine whether jurisdiction exists. *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1180 (7th Cir. 1989). Dachev and Svilosa allege that they have a financial interest in the Foundation's recovery of money, as they loaned the Foundation the money paid to Defendants. This kind of personal stake in a lawsuit is sufficient to satisfy Article III. *CWCapital Asset Mgmt., LLC v. Chicago Properties, LLC*, 610 F.3d 497, 501 (7th Cir. 2010) ("There is no doubt about Article III standing in this case; though the plaintiff may not be an assignee, it has a personal stake in the outcome of the lawsuit because it receives a percentage of the proceeds of a defaulted loan that it services."); see also *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622,

---

[5] The parties identify the relevant legal standard for establishing Article III standing, but do no more to apply that standard to the facts of this case. Instead, the parties purport to address both the Article III standing requirement and the prudential standing requirement together [38, at 3 n.3], even though the doctrines involve different analyses. Although the parties purport to address both doctrines together, the parties focus on whether Dachev and Svilosa assert claims based on their own legal rights and interests. Given that the parties fail sufficiently to address Article III standing, the Court would have found that the argument was waived if it were not a jurisdictional issue that the Court has an independent obligation to determine.

626 (7th Cir. 2017) (indicating that plaintiff challenging misleading advertising of a hybrid car would have Article III standing if he provided evidence showing that he provided the funds to purchase a vehicle).

That leaves the issue of what Defendants refer to as "prudential standing." Defendants argue that one well-established prudential standing limitation is that "plaintiffs must assert their own legal rights and interests, and cannot rest their claims to relief on the legal rights or interests of third parties." *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012) (citations omitted). The Court begins by noting some uncertainty regarding the continued validity of this "prudential standing" limitation. The Supreme Court recently has "called into question" the historical application of certain "prudential standing" principles. *Knopick v. Jayco, Inc.*, 895 F.3d 525, 529 (7th Cir. 2018). Specifically, in *Lexmark International, Inc. v. Static Control Components, Inc.*, the Supreme Court explained that it is a "misnomer" to use the term "prudential standing" to refer to which parties are permitted to bring claims under a statute. 572 U.S. 118, 127 (2014). The relevant question simply is whether a plaintiff has a cause of action under the relevant statute. *Id*.

The Seventh Circuit therefore has questioned to what extent historical "prudential standing" limitations remain viable. *Knopick v. Jayco, Inc.*, 895 F.3d 525, 530 (7th Cir. 2018) ("[W]e see no reason to exercise our power to dismiss this case on prudential standing grounds, assuming that power survives *Lexmark*."). Although the Supreme Court did not address whether *Lexmark*'s holding extends to third-party prudential standing doctrines, the Seventh Circuit has indicated that it likely does. *Id*. at 529 ("The Court reserved the question whether its holding extended to third-party standing, but its reasoning suggests that whether a shareholder has the ability to assert a corporation's rights is a matter determined under the substance of corporate and

agency law rather than federal jurisdiction." (citations omitted)). Neither party addressed the impact of *Lexmark* on the issue presently before the Court. Instead, the parties assume that traditional third-party "prudential standing" principles apply and address whether Dachev and Svilosa are asserting their own legal rights and interests based on their claimed status as third-party beneficiaries of the alleged contracts. Regardless, the outcome here is the same under traditional third-party prudential standing limitations and *Lexmark*'s cause-of-action approach.

To the extent that third-party prudential standing limitations apply, the Court agrees that Dachev and Svilosa have not established that they are asserting their own rights and interests in their breach-of-contract claims. Although Plaintiffs allege that Dachev and Svilosa are third-party beneficiaries of the Foundation's contract with Rich America [35 (Am. Compl.), at ¶¶ 20, 38], such conclusory allegations are not sufficient to survive a motion to dismiss. *In re VTech Data Breach Litig.*, 2018 WL 1863953, at *5 n.8 (N.D. Ill. Apr. 18, 2018).

Dachev and Svilosa also fail to allege sufficient facts to support this conclusory allegation. "The Supreme Court of Illinois has explained that 'Illinois follows the "intent to benefit" rule; that is, third-party beneficiary status is a matter of divining whether the contracting parties intended to confer a benefit upon a nonparty to their agreement.'" *Quinn v. McGraw-Hill Companies, Inc.*, 168 F.3d 331, 334 (7th Cir. 1999) (quoting *XL Disposal Corp. v. John Sexton Contractors Co.*, 659 N.E.2d 1312, 1316 (Ill. 1995)). "Illinois has made it very difficult to prove intent to benefit the third party, because 'there is a strong presumption that parties to a contract intend that the contract's provisions apply to *only* them and not to third parties.'" *Id*. (quoting *155 Harbor Drive Condominium Ass'n v. Harbor Point, Inc.*, 568 N.E.2d 365, 375 (Ill. App. Ct. 1991)). "Under Illinois law, it is not enough that the parties know, expect or even intend that another will benefit if the contract fails to express that intention." *Bob Evans Farms, Inc. v. Excellent Builders, Inc.*,

1988 WL 80137, at *2 (N.D. Ill. July 27, 1988) (citation omitted). A plaintiff must identify "an express provision in the contract identifying the third-party beneficiary." *Cahill v. E. Ben. Sys., Inc.*, 603 N.E.2d 788, 792 (Ill. App. Ct. 1992) (citation omitted). Plaintiffs have not identified any such express provision here.

Plaintiffs argue that the Court nonetheless should deny Defendants' motion to dismiss because whether the parties intended Dachev and Svilosa to be third-party beneficiaries is an issue of fact that is to "be 'to be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution.'" [50, at 9 (quoting *City Of Yorkville ex rel. Aurora Blacktop Inc. v. Am. S. Ins. Co.*, 654 F.3d 713, 717 (7th Cir. 2011)).] Still, this does not excuse Plaintiffs of their obligation to plead facts sufficient to support their claims. See, *e.g., Quinn*, 168 F.3d at 335 (granting motion to dismiss based on failure to establish third-party-beneficiary status). Accordingly, Plaintiffs' breach of contract claims would be barred by third-party prudential standing limitations. Because Illinois law limits who can bring a cause of action for breach of contract—as discussed above—the result would be the same if the Court applied the cause-of-action analysis set forth in *Lexmark*. Accordingly, the Court grants (with leave to replead) Defendants' motion to dismiss the breach of contract claims (Counts II-IV) brought by Dachev and Svilosa.

However, Defendants fail to make any prudential standing argument with respect to the remaining claims of Dachev and Svilosa. Because it is well-established that "prudential limitations are not jurisdictional[,]" *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 689 (7th Cir. 2015), "[p]rudential standing issues are subject to waiver[.]" *RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010). Even if third-party prudential standing principles apply, Defendants failure to address how such standing principles relate to the remaining claims of Dachev and Svilosa results in waiver of

any such arguments. The Court therefore denies Defendants' motion to dismiss Dachev's and Svilosa's remaining claims for lack of prudential standing.

**B.      Breach of Written Contract (Count II)**

Defendants move to dismiss Plaintiffs' breach of written contract claim (Count II) for failure to state a claim under Rule 12(b)(6). Although the parties do not address what law applies to Plaintiffs' breach of contract claim (or Plaintiffs' other common-law claims), the parties appear to assume that Illinois law applies to all claims brought by Plaintiffs. "To state a claim for breach of contract under Illinois law, a party must allege '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) the resultant damages.'" *Hongbo Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 600 (7th Cir. 2014) (quoting *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 764 (7th Cir. 2010)).

Defendant argues that Plaintiffs' breach of written contract claim fails because Plaintiffs fail sufficiently to allege substantial performance. Specifically, Defendants argue that Plaintiffs fail to allege that they timely paid the deposits and the total amounts due under the written contracts. Plaintiffs contend that Defendants' argument for dismissing Plaintiffs' breach of written contract claim for failure to allege substantial performance are without merit because (1) substantial performance is an issue of fact that precludes dismissal, and (2) because Plaintiffs allege partial performance (*i.e.*, payment of $367,800), including the initial deposits required under their contracts with the celebrities.

With respect to the first argument, the fact that an element of a claim presents an issue of fact does not excuse Plaintiffs' obligation to allege sufficient facts to establish that element. Indeed, none of the state-court cases cited by Plaintiffs address what allegations are necessary to survive a motion to dismiss in federal court.

11

With respect to the second argument, Plaintiffs do not allege that they timely paid the deposits required under the contract. Although the written agreements indicate that deposits were to be paid in August, Plaintiffs allege that they "sent Defendants a total of $367,800 in August *and September* 2016 to 'secure'" Britney Spears and Snoop Dogg for their event. [35, at ¶ 22.] Because $367,800 exceeds the total amount for the required deposits, it is possible that Plaintiffs paid the required deposits in a timely manner but paid additional funds in September. However, it also could be true that Plaintiffs paid only a portion of the required deposits in August, as required by the contract. Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' breach of written contract claim with leave to amend.

If Plaintiffs file a second amended complaint, Plaintiffs allegations should make clear to what extent the deposits were timely made. If the deposits were not timely made, Plaintiffs should be prepared to explain why the Court nonetheless should find that they substantially performed under the contract. For example, Plaintiffs may be able to show that Defendants waived the initial deposit deadlines. Under Illinois law, "a contracting party may waive provisions beneficial to it or waive strict compliance by conduct or actions 'indicating that strict compliance with a particular provision will not be required.'" *In re Krueger*, 192 F.3d 733, 738 (7th Cir. 1999) (quoting *Barker v. Leonard*, 635 N.E.2d 846, 848 (Ill. App. Ct. 1994)). Thus, "[w]here a party accepts late payments it may waive or suspend its right to timely payments[.]" *Allabastro v. Wheaton Nat. Bank*, 395 N.E.2d 1212, 1217 (Ill. App. Ct. 1979).[6]

---

[6] Plaintiffs fail in many respects to support their arguments with relevant legal authority. For example, Plaintiffs argue that they were not required to pay Defendants the total amount due because Defendants already had told Plaintiffs that Britney Spears and Snoop Dogg backed out of the concert. Ignoring the fact that it is not clear from the allegations in the complaint that Plaintiffs were so informed *before* the total amount for each respective contract was due, Plaintiffs also fail to cite to any authority in support of that position. Although the argument has some persuasive force as a practical matter, the Court still must apply the relevant legal standards. "It is not the obligation of this court to research and construct the legal

## C.    Breach of Oral Contract (Count III)

### i.    Existence of Oral Contract

Defendants argue that Plaintiffs' breach of oral contract claim (Count III) should be dismissed because Plaintiffs fail sufficiently to allege the existence of any oral contract. Under Illinois law, "[a] contract, to be valid, must contain offer, acceptance, and consideration." *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 528 (7th Cir. 2003) (quoting *Halloran v. Dickerson*, 679 N.E.2d 774, 782 (Ill. App. Ct. 1997)). "No contract exists under Illinois law, and, indeed, under principles of general law, if the agreement lacks definite and certain terms; nor is a contract formed by an offer that itself lacks definite and certain material terms and does not require such terms to be supplied by an acceptance." *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 850 (7th Cir. 2007). Defendants argue that Plaintiffs fail to allege any material terms and/or conditions sufficient to establish a valid contract. Plaintiffs argue that they sufficiently have alleged a valid contract with respect to (1) the 2016 concert, and (2) the 2017 concert.

With respect to the 2016 concert, Plaintiffs contend that they offered to pay Defendants to secure celebrities to perform at the 2016 concert and that Defendants accepted Plaintiffs' money as consideration. Specifically, Plaintiffs allege that "Defendants agreed to act as Plaintiffs' agent[s] and use the money provided by Plaintiffs to secure Plaintiffs' preferred artists." [35, at ¶ 16.] According to the allegations in the amended complaint, "[t]he parties understood and agreed that any money sent to Defendants to secure an artist who declined the offer, or who otherwise could not be secured to perform, would be returned to Plaintiffs." [*Id.*] While these allegations may establish an intent to contract, that is not enough to sustain a breach of contract claim. *Wagner Excello Foods, Inc. v. Fearn Int'l, Inc.*, 601 N.E.2d 956, 960 (Ill. App. Ct. 1992) ("To be

---

arguments open to the parties, especially when they are represented by counsel." *United States v. Williams*, 877 F.2d 516, 518-19 (7th Cir.1989) (citing cases).

enforceable, a contract must show a manifestation of agreement between the parties and be definite and certain in its terms. When material terms and conditions are not ascertainable, there is no enforceable contract, even if the intent to contract is present.") (internal citations omitted)). Plaintiffs fail entirely to allege any definite or certain terms. For example, other than Plaintiffs' allegations regarding Britney Spears and Snoop Dog—which relate to the terms of the written agreements—Plaintiffs fail to allege any terms regarding the celebrity engagements that Defendants allegedly agreed to secure. Furthermore, Plaintiffs fail to allege how much they agreed to pay Defendants. Accordingly, Plaintiffs fail to allege sufficient facts to establish an enforceable contract under Illinois law with respect to the alleged agreement regarding the 2016 concert.

Plaintiffs' argument with respect to the 2017 concert fails for the same reasons. Plaintiffs allege that they "asked that Defendants apply the money that they thought had been given to artists [to] another Sofia concert that would be held around June 2017[.]" [35, at ¶ 24.] Again, Plaintiffs fail to provide any details about the alleged agreement. As with the alleged agreement regarding the 2016 concert, Plaintiffs fail to identify any standards for the retention of celebrities to perform at the 2017 concert. And again, Plaintiffs fail to allege how much they agreed to pay Defendants. Although Plaintiffs already had paid Defendants $367,800 to be used to secure celebrity performances, Plaintiffs could not have expected that amount would cover performance fees for all of the celebrities that Defendants indicated had provided verbal confirmations.[7] Accordingly, Plaintiffs fail to allege sufficient facts to establish an enforceable contract under Illinois law with respect to the alleged agreement regarding the 2017 concert. The Court therefore grants

---

[7] The complaint alleges that Plaintiffs were informed that JLo, Jessica Simpson, Rihanna, Beyoncé, Diana Ross, Ludacris, Smiley, Mohombi, Iggy Azalea and David Guetta all had provided verbal confirmations to appear at the 2017 concert.

Defendant's motion to dismiss Plaintiffs' breach of oral contract claim (Count III) with leave to amend.[8]

It also is unclear to the Court whether Plaintiffs sufficiently have alleged consideration. In its motion to dismiss, Defendants argued that Plaintiffs have not alleged "consideration provided to Rich America for its services." [38, at 8.] Plaintiffs respond that the money they paid Defendants constitutes consideration under Illinois, but Plaintiffs fail to offer legal authority supporting any argument that such money (which was to be paid to celebrities, not Defendant RA) constitutes consideration under Illinois law. The Court recognizes that "a promise based upon consideration of a benefit to a third person" sometimes "constitutes sufficient consideration[.]" *Palmetto Leasing Co. v. Chiles*, 602 N.E.2d 77, 79 (Ill. App. Ct. 1992) (citing *Finn v. Heritage Bank & Trust Co.*, 533 N.E.2d 539 (Ill. App. Ct. 1989)). The Court also recognizes that "[a]n act or promise that benefits one party or is a detriment to the other party is consideration sufficient to support a contract." *In re Marriage of Tabassum & Younis*, 881 N.E.2d 396, 406 (Ill. App. Ct. 2007) (citing *Village of South Elgin v. Waste Management of Illinois, Inc.*, 810 N.E.2d 658 (Ill. App. Ct. 2004)). Although Plaintiffs may be able to allege facts sufficient to establish consideration under these and other relevant Illinois state-law standards, Plaintiffs fail entirely to

_____

[8] If Plaintiffs are unable to allege additional facts supporting the existence of a valid contract and/or consideration, Plaintiffs may be able to seek relief under other legal theories such as unjust enrichment and promissory estoppel. To state a claim for unjust enrichment under Illinois law, "'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). "In order to maintain an action for promissory estoppel under Illinois law, a plaintiff must allege: (1) a promise that is unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance is expected and foreseeable by the party making the promise; and (4) the party to whom the promise is made relies on the promise to his or her detriment." *Bryant v. Jackson Nat. Life Distributors*, LLC, 2013 WL 1819927, at *4 (N.D. Ill. Apr. 30, 2013) (citing *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520 (Ill. 2009)). The Court takes no position on whether Plaintiffs would be able to state a claim under those theories. The Court notes, however, that a party who cannot establish a valid contract may nonetheless be able to recover.

raise any such argument here. If Plaintiffs file a second amended complaint, the Court expects that Plaintiffs will address this issue—with citation to relevant legal authorities—in response to any later motion to dismiss.

## ii. *Effect of Written Agreements*

Defendants also argue that Plaintiffs' breach of oral contract claim should be dismissed because the alleged oral agreements cannot be used to supplement the parties' written agreements. Although the Court already is dismissing Plaintiffs' breach of oral contact claim for failure to allege a valid contract, the Court briefly will address this issue in the interest of completeness. To the extent that Plaintiffs seek to bring a claim based on post-contractual oral agreements (*i.e.*, the alleged agreement regarding the 2017 concert), Defendants' argument fails because, "[u]nder Illinois law, parties may orally amend their written contract even though it contains a merger clause." *Brummel v. Blount Int'l, Inc.*, 1986 WL 9756, at *1 (N.D. Ill. Sept. 4, 1986) (citing *Estate of Kern v. Handelsman,* 450 N.E.2d 1286, 1290 (Ill. App. Ct. 1983)); see also *Hannafan & Hannafan, Ltd. v. Bloom*, 959 N.E.2d 1280, 1286 (Ill. App. Ct. 2011) ("Parties to a written contract may modify its terms by a subsequent oral agreement." (citation omitted)).

To the extent that Plaintiffs seek to bring a claim based on pre-contractual oral agreements, it is not clear whether Plaintiffs' claims would be barred because of the written agreements. The Court recognizes that, under Illinois law, "[i]t is well settled under the doctrine of merger and the parol evidence rule that a written agreement that is complete on its face supersedes all prior agreements on the same subject matter and bars the introduction of evidence concerning any prior term or agreement on that subject matter[.]" *Magnus v. Lutheran Gen. Health Care Sys.*, 601 N.E.2d 907, 914 (Ill. App. Ct. 1992) (collecting cases). However, it is not clear to what extent the prior verbal agreements regarding the 2016 concert relate to the same subject matter. The written

agreements relate to the retention of specific artists, while the alleged oral agreements appear to relate to Defendants' general relationship with Plaintiffs. Because the parties do not address whether and to what extent the oral agreements and the written agreements can be said to relate to the same subject matter under Illinois law, the Court defers resolution of the effect of the written agreements on any prior oral agreement.

### D. Breach of Implied Contract (Count IV)

Plaintiffs bring a breach of implied contract claim (Count IV) against Defendants, alleging that "Plaintiffs and Defendants entered into an implied-in-fact agreement, pursuant to which, in exchange for payment, Defendants agreed to act as an agent of Plaintiffs and contact Plaintiffs' preferred artists in an effort to book them to perform at the Charity Concert and 2017 Concert, to use the monies paid by Plaintiffs for the stated purposes, and to return said monies if the final agreements with artists could not be reached." [35 (Am. Compl.), at ¶ 48.] Defendants argue that Plaintiffs' breach of implied contract claim fails because Plaintiffs' allegations regarding an implied-in-fact contract directly contradict the terms of the alleged express contracts. Specifically, Defendants argue that Plaintiffs' allegations of an implied agreement contradict the terms of the written agreements providing that failure to pay the entire performance fee could result in the artist cancelling the contract and Plaintiff being liable for damages, including the total performance fee. Defendants further argue that there are no facts demonstrating that the Plaintiffs and Defendants had a meeting of the minds and formed an unwritten agreement for the return of the Foundation's money if an artist cancelled an agreement due to the Foundation's breach.

Defendants' argument is premised on the assumption that the artists did cancel the written agreements because of Plaintiffs' breach. But Plaintiffs do not allege that the artists ever cancelled the written agreements. In fact, it is questionable how the artists could cancel an agreement that

neither they nor their representatives knew existed.[9]  The terms of the alleged implied contract do not contradict the terms of the express contract.  The Court therefore denies Defendants' motion to dismiss Plaintiffs' claim for breach of implied contract on that basis.

The Court questions whether Plaintiffs otherwise have sufficiently alleged a breach of implied contract claim.  Specifically, the Court questions whether Plaintiffs sufficiently have alleged definite and certain terms, as Plaintiffs' allegations of an implied contract are no more detailed than Plaintiffs' allegations of an express oral contract.  "A contract implied in fact is an actual contract; the only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, either written or oral, while in the latter their agreement is arrived at by a consideration of their acts and conduct."  *Barry Mogul and Assocs., Inc. v. Terrestris Dev. Co.*, 643 N.E.2d 245, 251 (Ill. App. Ct. 1994) (citations omitted); *see also Estate of Jesmer v. Rohlev*, 609 N.E.2d 816, 820 (Ill. App. Ct. 1993) ("A contract implied in fact is one in which a contractual duty is imposed by reason of a promissory expression which may be inferred from the facts and circumstances and the expressions of the part of the promisor which show an intention to be bound." (citing *In re Estate of Milborn*, 461 N.E.2d 1075 (Ill. App. Ct. 1984))).  "The essential elements of both an express and implied contract in Illinois include offer, acceptance, and consideration."  *Ciszewski v. Denny's Corp.*, 2010 WL 2220584, at *5 (N.D. Ill. June 2, 2010) (citing *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 996 (7th Cir. 2007)).  Defendants argue that Plaintiffs fail to allege definite and certain terms with respect to Plaintiffs breach of oral contract claim, but Defendants do not make the same argument

---

[9] As discussed above, Plaintiffs allege that "Defendants were not authorized to represent or act on behalf of any of the major celebrities promised by Defendants, including Britney Spears and Snoop Dogg[.]"  [35 (Am. Compl.), at ¶ 26(b).]  Plaintiffs further allege that "[t]he major celebrities promised by Defendants, including Britney Spears and Snoop Dogg and their representatives, had never received any deposit from Defendants, had never entered into any agreement with Defendants and had never heard of Defendants[.]"  [*Id*. at ¶ 26(c).]

with respect to Plaintiffs' breach of implied contract claim. Because Defendants do not raise the argument, the Court will not dismiss Plaintiffs' breach of implied contract claim on that basis.

### E. Conversion (Count V)

Defendants also move to dismiss Plaintiffs' conversion claim (Count V). "To state a claim for conversion under Illinois law, a plaintiff must allege: '(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property.'" *Toll Processing Servs., LLC v. Kastalon, Inc.*, 880 F.3d 820, 824 (7th Cir. 2018) (quoting *Gen. Motors Corp. v. Douglass*, 565 N.E.2d 93, 96-97 (Ill. App. Ct. 1990)).

Defendants argue that Plaintiffs fail to allege sufficient facts to establish that they had right to the immediate possession of the property (*i.e.*, the money paid to Defendants). Although Plaintiffs allege that they had a right to the immediate return of the money paid when Defendants purportedly failed to secure certain artists [35, at ¶ 54], Defendants argue that this claimed right is contradicted by the terms of the written agreements. Specifically, Defendants argue that Plaintiffs were no longer entitled to a refund of the deposit money once Plaintiffs failed fully to pay the amounts owed under the written agreements. Although the written agreements provide that the artists (*i.e.*, Britney Spears and Snoop Dog) reserve the right to cancel the agreements and keep any compensation provided by Defendants if Defendants failed to make timely payments under the agreements, Plaintiffs do not allege that the artists ever exercised that right. As discussed above, it is questionable how the artists could cancel an agreement that neither they nor their representatives knew existed. Making all reasonable inferences in Plaintiffs favor, the Court cannot conclude that the artists were entitled to keep deposits under an agreement that was never

cancelled and under which they never performed. The written contracts therefore do not contradict Plaintiffs' claim that they had right to the immediate possession of the property. Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' conversion claim (Count V).

The Court questions whether Plaintiffs' conversion claim is proper for other reasons. For example, "Illinois law limits the situations where a plaintiff may maintain an action for the conversion of money." *Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 967 (N.D. Ill. 2002). "Only if the money at issue can be described as specific chattel—in other words, a specific fund or specific money in coin or bills—will conversion lie." *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) (internal citations and quotations omitted). Because the parties have not raised that issue, the Court takes no position on whether Plaintiffs' allegations are sufficient to satisfy that standard at this time.

### F.     Account (Count VI)

Plaintiffs allege that Defendants have become indebted to Plaintiffs in the amount of $367,800, and that pursuant to the Illinois Interest Act, 815 ILCS 205/1, Plaintiffs are entitled to five-percent interest. Defendants argue that the Illinois Interest Act does not apply because "[i]t is well settled that the Interest Act applies to those contracts which in substance involve a loan of money and is not applicable where there is a bona fide sale of goods or services." *Dennis v. Old Republic Ins. Co.*, 578 N.E.2d 1010, 1015 (Ill. App. Ct. 1991) (citation omitted). Although Plaintiffs' amended complaint indicates that they are seeking to bring a claim under the Illinois Interest Act [see 35 (Am. Compl.), at ¶¶ 59-61], Plaintiffs really are just seeking prejudgment interest under the Illinois Interest Act. Whether Plaintiffs are entitled to prejudgment interest is a damages issue, which is premature at the motion to dismiss stage. *Comtech Holdings, Inc. v. Bruner Corp.*, 2018 WL 4468971, at *4 (C.D. Ill. Sept. 18, 2018) ("Whether or not the Plaintiff is

entitled to prejudgment interest is a question of damages appropriate only after a finding that Plaintiff is entitled to some principal monetary award.").[10]   The Court therefore defers consideration of the applicability of the Illinois Interest Act.

### G.   Consumer Fraud (Counts VII and VIII)

Defendants move to dismiss Plaintiffs' claims under the Illinois Consumer Fraud Act ("ICFA").  To state a claim under the ICFA, a plaintiff must allege "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 608 (7th Cir. 2013) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)).  The protections of the ICFA are ordinarily limited to "consumers."  See *Roppo v. Travelers Cos.*, 100 F. Supp. 3d 636, 650 (N.D. Ill. 2015) (citing *Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 220 (Ill. App. Ct. 2003)).  Defendants argue that Plaintiffs' claim under the ICFA fails for a number of reasons.

First, Defendants argue that a deceptive act or practice requires more than the mere fact that a defendant promised something then failed to do it.  According to Defendants, allegations that a defendant entered into a contract with no intention of fulfilling it are insufficient to state a claim under the ICFA.  [38, at 12-13 (citing *Petri v. Gatlin*, 997 F. Supp. 956, 968 (N.D. Ill. 1997)).]  However, Plaintiffs do not merely allege that Defendants entered into contracts with no intention of fulfilling them.  Plaintiffs allege that from late September 2016 through around April 2017, Defendants represented that they were negotiating with celebrities for their participation in

---

[10] Although a plaintiff may bring a claim under the Illinois Interest Act when it alleges that defendant improperly calculated interest due, see, *e.g.*, *Dennis*, 578 N.E.2d at 1015, Plaintiffs here merely seek application of the Illinois Interest Act to damages recovered on other underlying claims.  Under such circumstances, courts apply the Illinois Interest Act when calculating damages due.  See, *e.g.*, *SNA Nut Co. v. Haagen-Dazs Co., Inc.*, 302 F.3d 725, 734 (7th Cir. 2002).

the 2017 Concert. [35 (Am. Compl.), at ¶ 24.] Defendants sent Plaintiffs emails discussing specific communications that Defendants claimed to have had with various celebrities. [*Id*.] Defendants even represented that numerous high-profile celebrities had provided verbal confirmation that they would perform at the 2017 concert. [*Id*.] Defendants even sent a video of a celebrity look-alike purporting to be the real celebrity. [*Id*. at ¶ 26.] Defendants do not explain how these allegations are insufficient to establish a deceptive act or practice. The Court therefore denies Defendants' motion to dismiss Plaintiffs' ICFA claim for failure to allege a deceptive act or practice.

Second, Defendants argue that Plaintiffs' ICFA claims fail because Plaintiffs do not qualify as consumers under the statute. A consumer is defined in the ICFA as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). The ICFA defines "merchandise" to include "services." 815 Ill. Comp. Stat. Ann. 505/1(b); see also *Skyline Int'l Dev. v. Citibank*, F.S.B., 706 N.E.2d 942, 946 (Ill. App. Ct. 1998) (corporation purchasing services qualifies as a consumer under the ICFA). Plaintiffs allege that they are consumers of Defendants' "merchandise"—namely, Defendants' services of securing artists for a charity event. [35, at ¶ 63.]

Defendants next argue that because Plaintiffs contracted for services for "resale" to concert goers, Plaintiffs fail to fall within the ICFA's definition of consumer. However, neither Defendants nor Plaintiffs cite to cases explaining what it means to "resale" merchandise under the ICFA. The Seventh Circuit has held that "a business purchaser is not a consumer" where "his only use of the purchased product is as an input into the making of a product that he sells[.]" *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004). It is not clear whether the use of

services (as opposed to a component part) in merchandise for resale is excluded under the ICFA. Courts have reached different conclusions on that issue. Compare *Ivanhoe Fin., Inc. v. Highland Banc Corp.*, 2004 WL 2091997, at *5 (N.D. Ill. Sept. 15, 2004) ("The analogy between products and services is not perfect, but the rationale underlying the business-consumer exception applies equally to the services context."), with *Ivanhoe Fin., Inc. v. Mortg. Essentials, Inc.*, 2004 WL 856591, at *2 (N.D. Ill. Apr. 21, 2004) (concluding that services used did not constitute merchandise for resale under the ICFA). Because the parties do not sufficiently address the issue, the Court declines to rule on this issue on which courts are split without the benefit of adequate briefing.

Finally, Defendants argue that Plaintiffs' ICFA claims fail because Plaintiffs fail to allege "conduct involve[ing] trade practices addressed to the market generally or otherwise implicat[ing] consumer protection concerns[,]" which is required whenever "a dispute under the Consumer Fraud Act involves businesses who are not consumers of each other's products[.]" *Empire Home Servs., Inc. v. Carpet Am., Inc.*, 653 N.E.2d 852, 854 (Ill. App. Ct. 1995). Plaintiffs appear to concede that they cannot make such a showing, as they do not argue that their allegations are sufficient to establish trade practices addressed to the market generally or otherwise implicates consumer protection concerns. However, such a showing is not necessary where the plaintiff is a consumer. Because the Court is deferring deciding whether Plaintiffs constitute consumers under the ICFA, the Court cannot grant Defendant's motion to dismiss Plaintiffs' claims under the ICFA.

## H.    Fraud (Counts I, VII, and VIII)

Defendants argue that Plaintiffs fail to plead their fraud claims (Counts I, VII, and VIII) with sufficient particularity. "Rule 9(b) requires a pleading to 'state with particularity the circumstances constituting fraud.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737

(7th Cir. 2014) (quoting Fed. R. Civ. P. 9(b)). "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Id*. (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)). Defendants argue that Plaintiffs' allegations of fraud fail to meet this heightened pleading standard because (1) Plaintiffs' allegations are pled on information and belief, and (2) Plaintiffs' allegations improperly lump all Defendants together.

With respect to Defendants' first argument, Plaintiffs are permitted to plead claims on information and belief. *Frerck v. Pearson Educ., Inc.*, 2012 WL 1280771, at *3 (N.D. Ill. Apr. 16, 2012) ("[N]umerous courts have continued to uphold pleadings made 'on information and belief' after *Twombly* and *Iqbal*." (collecting cases)). With the exception of one allegation of fraud that is unnecessary for Plaintiffs' fraud claims to survive,[11] Plaintiffs allegations of fraud are not pled on information and belief. Because Plaintiffs do not plead "'the who, what, where, and how' of the alleged in fraud" on information and belief, the Court denies Defendants' motion to dismiss Plaintiffs' fraud claims based on other allegations pled on information and belief. *Simonian v. Allergan, Inc.*, 757 F. Supp. 2d 785, 788 (N.D. Ill. 2010) (denying motion to dismiss under Rule 9(b) where allegations pled on information and belief did not relate to "'the who, what, where, and how' of the alleged in fraud" (quoting *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 401 (7th Cir. 2009))).

With respect Defendant's second argument, Plaintiffs' only specific allegations of misconduct relate to Defendant Allen, a non-moving Defendant against whom the Court already entered an order of default. Specifically, Plaintiffs allege that in August 2016, Allen falsely

---

[11] Plaintiffs do allege that they "are informed and believe that Defendants have deceived and continue to deceive concert investors through the same pattern of deception as alleged herein." [35 (Am. Compl.), at ¶ 75.] However, that allegation is not necessary to Plaintiffs' fraud claims.

represented that RA was acting in coordination with RCA Records ("RCA") and Sony Music Group ("Sony") and would contact various music celebrities to secure performance contracts for Plaintiffs' charity event. [35, at ¶ 17.] Allen represented that he was acting as the "agent" of Britney Spears and Snoop Dog. [*Id*. at ¶ 19.] Plaintiffs subsequently discovered that these representations were false. [*Id*. at ¶ 26.]

However, Plaintiffs' allegations with respect to the moving Defendants are insufficient. Plaintiffs do not identify any misrepresentations by any Defendant other than Allen. Although Plaintiffs allege that each of the Defendants is the agent, joint venture and/or employee of each of the other Defendants (a conclusory allegation that does not even make sense as a logical matter), Plaintiffs fail to allege facts supporting that assertion, which is necessary to survive a motion to dismiss.[12] *Scheinman ex rel. Scheinman v. Martin's Bulk Milk Serv., Inc.*, 2010 WL 3701334, at *10 (N.D. Ill. Sept. 9, 2010) ("Without any factual support to establish an agency or apparent agency relationship, plaintiff's legal conclusions regarding [the agency relationship] would not overcome a motion to dismiss.").

Although Plaintiffs also allege misconduct by Defendants generally [see 35 (Am. Compl.), at ¶¶ 24, 28], a complaint cannot "lump multiple defendants together[.]" *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 994 (N.D. Ill. 2010). Rather, a complaint should "inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (quoting *Balabanos v. N. Am. Inv. Grp., Ltd.*, 708 F. Supp. 1488, 1493 (N.D. Ill. 1988)). Because Plaintiffs fail to do so here, the Court grants Defendants' motion to dismiss Plaintiffs'

---

[12] Indeed, Plaintiffs do not even argue that they sufficiently have alleged the kind of agency relationship necessary to allow the Court to attribute Allen's alleged misconduct to other Defendants.

fraud claim against RA, Goodrum, and Does 1-25 with leave to amend the complaint to add specific factual allegations of fraud regarding these Defendants.[13]

## IV.    Conclusion

For the reasons set forth above, the motion to dismiss [38] is granted in part and denied in part. Plaintiffs are given until March 1, 2019 to file a second amended complaint, if they so choose. Status hearing set for March 6, 2019 at 9:00 a.m.

Date: February 4, 2019

Robert M. Dow, Jr.
United States District Judge

---

[13] Plaintiffs attempt to distinguish cases holding that complaints cannot lump defendants together by arguing that those cases are distinguishable because they (according to Plaintiffs) involved more defendants than this case. [50, at 23 (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (involving 15 entities); *Freedom Mortgage Corp. v. Burnham Mortgage, Inc.*, 720 F. Supp. 2d 978 (N.D. Ill. 2010) (involving 21 defendants).] However, Plaintiffs fail to cite any authority indicating that the rule against "lumping" defendants together applies only to cases involving some threshold number of defendants. The Court is not aware of any such cases and sees no reason for creating such a rule. Regardless, Plaintiffs actually do seek to bring claims against 28 Defendants (*i.e.*, RA, Allen, Goodrum, and the 25 Does).