**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| KRASIMIR DACHEV, an individual, | ) | |
| PEACE FOR YOU PEACE FOR ME, a | ) | |
| non-profit foundation organized under | ) | |
| the laws of Bulgaria, and SVILOSA AD, | ) | |
| a Joint Stock Company organized under | ) | |
| the law of Bulgaria, | ) | Case No. 17 CV 5729 |
| | ) | Hon. Robert M. Dow, Jr. |
| Plaintiffs, | ) | *Judge Presiding* |
| | ) | |
| v. | ) | **Jury Trial Demanded** |
| | ) | |
| RICH AMERICA, INC., a corporation | ) | |
| organized under the laws of Illinois, | ) | |
| BRANDON ALLEN, an individual, | ) | |
| LEONARD GOODRUM, an individual, | ) | |
| and DOES 1-25, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT RICH AMERICA INC., AND**
**LEONARD GOODRUM'S REPLY IN SUPPORT OF THEIR**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Defendants, RICH AMERICA, INC. and LEONARD GOODRUM, by and through their attorneys, TELLY STEFANEAS and BREEN & PUGH, submit their reply to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, and respectfully request the Court to enter an order dismissing the Second Amended Complaint ("SAC").

**INTRODUCTION**

Plaintiffs complain that Defendants are attempting to expand the standard of Rule 12(b)(6) and litigate factual issues at the pleading stage. But this is not the case, Defendants are simply asking the Court to hold Plaintiffs to their burden of pleading allegations which show a facial plausibility that Defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The central problem throughout the SAC is Plaintiffs' ill-fated attempts to allege individual claims on behalf of Dachev and Svilosa, two parties that have no business being involved in this litigation.

**ARGUMENT**

**I.      Dachev and Svilosa's Individual Claims Must Be Dismissed**

Throughout the SAC Plaintiffs attempt to portray Dachev and Svilosa as two parties whose roles in organizing the charity concert were so similar to the Foundation's that that they suffered the same alleged injuries as a result of Defendants' purported fraud. To give the appearance that the Foundation, Dachev, and Svilosa stand together, the SAC consistently refers to Plaintiffs in the collective and does little to distinguish their individual roles in organizing the charity concert. Plaintiffs attempt to leave the impression that that they acted in concert, and that the alleged fraud against the Foundation is therefore a fraud against Dachev and Svilosa. Despite Plaintiffs' efforts to paint themselves with the same brush, Dachev and Svilosa do not stand in the same shoes as the Foundation and cannot maintain individual claims against Defendants.

What the SAC does make clear is that it was the Foundation, not Dachev or Svilosa, which was responsible for organizing the charity concert, engaging in discussions with Defendants, hiring Defendants to secure performances by celebrity musicians, and directing the Foundation's money be transferred to Defendants for that purpose. Dachev and Svilosa had no role in this process, and it is fatal to their individual claims.

As argued in Defendants' Motion to Dismiss, Dachev and Svilosa's attenuated role in organizing the charity concert is cause to dismiss their individual claims pursuant to: (1) the prudential doctrine barring third-party standing; (2) the cause-of-action analysis outlined in *Lexmark Intern., Inc. v. Static Control Components, Inc.*; and (3) Dachev and Svilosa's failure to state a claim under Rule 12(b)(6).

**A.      The Prudential Standing Doctrine Bars Dachev and Svilosa's Individual Claims**

Plaintiffs argue, without citation to any authority, that because the Supreme Court has signaled its willingness to reexamine the prudential bar to third party standing, that such doctrine is not relevant to this case. (Resp. at 3)[1]. In *Lexmark International,* the Supreme Court

---

[1] Plaintiffs Response to Defendants' Motion to Dismiss the Second Amended Complaint is cited as "Resp."

2

questioned the continued validity of the doctrine known as prudential standing. *Lexmark Intern., Inc. v. Static Control Components, Inc.* 572 U.S. 118 (2014). The Supreme Court held that "a court… cannot limit a cause of action *that Congress has created* merely because 'prudence dictates.'" *Id.* at 128. The Court then reclassified the generalized-grievances and zone-of-interest facets of the doctrine as being questions of statutory interpretation rather than prudential standing. *Id.* 129-133. However, the Supreme Court left in place the limitations on third-party standing, stating considering its "proper place in the standing firmament can wait another day." *Id* at 127; (MTD at 2-2)[2].

Despite its stated willingness to reconsider the application of the third-party standing doctrine, the Supreme Court has not revisited the issue. Most recently, in *Starr International Company Inc.,* the Supreme Court declined to grant certiorari where the single issue on appeal was the validity of third-party standing doctrine and let stand a lower court's application of the doctrine to bar a private litigant, with proper Article III standing, from asserting its claims. *See Starr International Company Inc. v. United States,* 586 F.3d 953 (1st Cr. 2017).

To this day, the prudential doctrine barring litigants from asserting the legal rights and interests of others is alive and well and should be applied in this case. *See Moncier v. Haslam,* 570 Fed. Appx/ 553, 556 (6th Cir. 2014) (finding the doctrine of third-party standing still valid); *In re Elec. Books Antitrust Litig.,* 14 F.Supp.3d 525, 534-35 (S.D. N.Y. 2014) (same); *Pringle v. Atlas Van Lines,* 14 F.Supp.3d 796, 799-800 (N.D. Tex. 2014) (same); *Calista Enters. Ltd. V. Tenza Trading Ltd.,* No. 13-CV-1045, 2014 WL 3695487, at *6 n.7 (D. Or. 2014) (same). Although the Supreme Court may revisit the issue, it has yet to abrogate the prohibition against third-party standing and Plaintiffs have offered no arguments or legal authority explaining why the Court should simply ignore the doctrine when it is still controlling law and squarely applies to Dachev and Svilosa's claims. Applying the reasoning in *Lexmark International* to overturn established precedent like the third-party standing doctrine, cited as an issue to be revisited

---

[2] Defendants' Motion to Dismiss the Second Amended Complaint is cited at "MTD."

another day, would ignore the Supreme Court's instruction that lower courts are to follow the case that directly controls and leave to the Supreme Court the prerogative of overturning its own decisions. *Agostini v. Felton,* 521 U.S. 203, 207 (1997).

**B.     Defendants' Prudential Standing Argument Is Not Waived**

Plaintiffs contend that Defendants' waived their prudential standing argument by failing to properly raise it in their Motion to Dismiss the First Amended Complaint. (Resp. at 3-4). This argument is based on the Court finding, in its ruling on Defendants' Motion to Dismiss the First Amended Complaint, that Defendants failed to make any prudential standing arguments in regards to Dachev and Svilosa's claims for fraud, conversion, and violations of the ICFA, and therefore those arguments were waived. Plaintiffs' waiver argument is unpersuasive.

Federal Rule of Civil Procedure 12(b)(6) provides that a party may file a motion asserting as a defense that the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Rule 12(g)(2) requires litigants to consolidate certain dismissal arguments in a single motion, but also contains an important exception: "except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." FED. R. CIV. P. 12(h); *Ennenga v. Starns,* 677 F.3d 766, 772-73 (7th Cir. 2012). The exception under Rule 12(h)(2) is clear that litigants need not consolidate all failure to state a claim arguments in a single motion as it permits a party to raise such arguments in any pleading under Rule 7(a), in a motion for judgement on the pleadings, or at trial. FED. R. CIV. P. 12(h)(2); *Ennenga,* 677 F.3d at 773. Therefore, the defense of failure to state a claim is "expressly preserved against waiver" by Rule 12(h), and it does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion. FED. R. CIV. P. 12 Advisory Committee Notes on 1966 Amendment; *Ennenga,* 677 F.3d at 773.

The waiver rule of Rule 12(h)(1) applies only to defenses under Rule 12(b)(2) to (5) and failure to state a claim defenses are exempted from waiver. FED. R. CIV. P. 12(h)(1); *Ennenga,* 677 F.3d at 773. Rules 12(g)(2) and 12(h)(1) only exclude the defenses of lack of personal

jurisdiction, improper venue, insufficient process, and insufficient service of process, when they asserted in a successive motion.[3] *Id.* Because the Court found that Defendants' failed to make any prudential standing argument regarding Dachev and Svilosa's claims for fraud, conversion, and Consumer Fraud, Defendants are raising new 12(b)(6) arguments that the Court may consider in a successive motion to dismiss.

### C. Defendants Are Not Impermissibly Expanding the Standard of Rule 12(b)(6)

Plaintiffs claim that through the prudential standing argument, Defendants are attacking certain elements of Dachev and Svilosa's individual claims and attempting to expand the scope of Rule 12(b)(6). (Resp. at 4). Plaintiffs do not expound on this argument nor cite any authority for this bare-bones assertion. Because prudential standing does not implicate a court's subject-matter jurisdiction, arguments regarding lack of prudential standing are properly evaluated under the rubric of a motion for failure to state a claim under Rule 12(b)(6). *MAO-MSO Recovery II, LLC v. Allstate Ins. Co.*, 17-CV-01340, 2018 WL 1565583, at *3 (N.D. Ill. Mar. 30, 2018). Therefore, a plaintiff must allege facts sufficient to satisfy the prudential requirements of the third-party standing doctrine. *Id.*

As detailed below, Defendants' arguments to dismiss Dachev and Svilosa's individual claims under the doctrine barring third-party standing, the cause-of-action analysis outlined in *Lexmark Intern., Inc.,* and for failure to state a claim, are the same. The arguments rest on the same operative facts, that Dachev and Svilosa were not involved in the negotiations with, the hiring of, or the payment to Defendants, and rely on the same legal analysis. For these reasons, Dachev and Svilosa's individual claims are subject to dismissal.

### D. Count I – Dachev and Svilosa Were Not Defrauded

For Dachev and Svilosa to state a claim for fraud, and satisfy the prudential requirements of third-party standing, they must allege that Defendants: (1) made a false statement of material

---

[3] In support of their argument, Plaintiffs cited to *Harris Bank Naperville v. Pachaly,* 902 F.Supp. 156 (N.D. Ill 1995) which is inapplicable to the facts of this case. The waiver issue in *Pachaly* concerned Rule 12(b)(2), lack of personal jurisdiction, which as detailed above, is subject to waiver pursuant to Rule 12(h)(1). The Court in *Pachaly* did not find that Rule 12(b)(6) defenses were subject to waiver.

fact; (2) knew or believed the statement to be false; (3) intended to and, in fact, did induce Dachev and Svilosa to reasonably rely and act upon the statement; and (4) caused injury to Dachev and Svilosa. *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 766 (7th Cir. 2010). Dachev and Svilosa have failed to sufficiently allege Defendants' purported misrepresentations were made to induce Davhev and Svilosa, and in fact induced Dachev and Svilosa, to reasonably rely and act upon those statements. (MTD at 5).

According to the allegations of the SAC, Defendants' alleged false statements were primarily directed at the Foundation, and its representative, for the purpose of inducing the Foundation into hiring Defendants to secure celebrity musicians, and providing Defendants with money to accomplish that goal. (SAC at ¶¶12, 14). There are no allegations that Dachev or Svilosa played any role in the decision to hire Defendants or provide them money. The charity concert was a project undertaken by the Foundation prior to Dachev and Svilosa's involvement in 2016. *Id.* at ¶12. The Foundation engaged in discussions with Defendants, through its agent, regarding Defendants securing artists for the charity concert. *Id.* at ¶14. Through its agent, the Foundation agreed to provide Defendants' money to secure the celebrity performances.[4] *Id.*

There are no allegations that Defendants knew of Dachev and Svilosa's involvement with the Foundation at the time the Foundation hired Defendants to secure musical performances. More importantly, there are no allegations that Defendants knew Dachev and Svilosa had agreed to loan the Foundation money, or that the money the Foundation provided Defendants were proceeds of a loan from Dachev and Svilosa. Plaintiffs have simply failed to allege how Defendants intended their alleged misrepresentations to induce Dachev and Svilosa to reasonably rely and act upon them, when there are no allegations inferring Defendants had any knowledge of Dachev and Svilosa's role at the Foundation.

---

[4] The SAC alleges that Krassimire Kourtev was "an agent and representative of the Foundation." (SAC at ¶14). But in the next sentence of the same paragraph, without any basis, Plaintiffs try and lump Dachev and Svilosa with the Foundation by claiming Kourtev was "acting as Plaintiffs' agent." *Id.* This contradicts the SAC's clear identification of Kourtev as an agent and representative of the Foundation, and the Exhibit attached to SAC identifying Kourtev as an agent of the Foundation. *See* Exhibit 1 to the SAC (letter from Defendants addressed to Krassimire Kourtev as a representative of the Foundation).

In their response, Plaintiffs argue that Dachev, who was the Chairman of the Board of Svilosa, was "not a distant institutional lender" but directly helped with the organization of the charity event, and was personally induced by Defendants to fund the alleged false artist agreements. (Resp. at 5-6). While still insufficient to plead facts regarding Defendants' intention to induce Dachev or Svilosa, or actually inducing Dachev or Svilosa, these allegations are not pleaded in the SAC. Plaintiffs' response is the first time they allege that Dachev was directly involved in organizing the charity concert, as the SAC alleges he was a sponsor, who decided to help "organize and invest" in the concert, and loaned the Foundation money to secure celebrity performances. (SAC at ¶¶ 3, 12, 15). The SAC is silent as to Svilosa's role or degree of involvement in organizing the charity concert, and never actually alleges Dachev and Svilosa's participation in the organization of the charity concert beyond loaning the Foundation money.

As support for the specious conclusion that Defendants intended Dachev and Svilosa to rely and act upon their alleged misrepresentations, Plaintiffs point to the allegations regarding emails sent by Defendants to Plaintiffs. (Resp. at 6). However, Dachev and Svilosa were only copied on those emails, and there are no allegations as to why Dachev and Svilosa were copied on those communications. The SAC only establishes that Dachev and Svilosa loaned the Foundation money. There are no allegations concerning any other role or responsibility they had which sheds any light on why they were copied on emails. Defendants and the Court should not have to speculate as to Dachev's actual role based on the fact he was copied on emails. If Dachev and Svilosa had a role in the charity concert beyond loaning the Foundation money, and the emails are evidence of their roles, Plaintiffs should have pleaded sufficient facts for the Court to make that inference.

Plaintiffs further argue that "Defendants' theory that inducement and reliance must be adjudicated at the pleading stage contradicts Seventh Circuit law." (Resp at 6). In support of this argument Plaintiffs cite *Labella Winnetka, Inc. v. General Cas. Ins. Co.*, where the District Court found that a plaintiff is not required to plead factual details supporting their allegations of reliance and inducement to meet the heightened pleading standard of Rule 9(b). *Id*; *Labella*

*Winnetka, Inc.* at 259 F.R.D. 143, 149 (N.D. Il. 2009). However, Defendants do not argue that Dachev and Svilosa failed to plead reliance and inducement with particularity. Rather, Defendants argue that Dachev and Svilosa outright failed to plead that Defendants intended their alleged false statements to induce Dachev and Svilosa to rely and act upon those statements.

### E.     Count II – Dachev and Svilosa Cannot Maintain a Claim for Conversion

To state a claim for conversion, Dachev and Svilosa must allege: (1) the Defendants' unauthorized and wrongful assumption of control, dominion or ownership over Dachev and Svilosa's personal property; (2) Dachev and Svilosa's right in the property; (3) their right to immediate possession of the property, absolutely and unconditionally, and (4) their demand for possession of the property. *Roderick Dev. Inv. Co., Inv. V. Cmty. Bank of Edgewater,* 282 Ill. App. 3d 1052, 1057 (1st Dist 1996). Because Dachev and Svilosa had no interest in the money paid or transferred to Defendants, Dachev and Svilosa cannot state a claim for conversion, or sufficiently allege facts to satisfy the prudential requirement of third-party standing, as the money was not the property of Dachev or Svilosa, they had no right in the property, and no absolute unconditional right to possession of the property.

As argued in Defendants' motion to dismiss, loan proceeds generally do not remain the property of the lender, and a debtor does not become a trustee for their creditor. (MTD at 5-7); *Nat'l Life Real Estate Holdings, LLC v. Scarlato,* 83 NE.3d 44, 56 (Ill. App. Ct. 1st 2017). Therefore, according to the allegations of the SAC, the Foundation is the only plaintiff with an alleged legal right or interest in the money. Without a legal right or interest in the money Dachev and Svilosa's individual claims for conversion must be dismissed.

Plaintiffs largely ignore the basic principles concerning loans of money cited in the motion to dismiss and instead claim that because the loan agreement is not attached to the SAC, and the SAC does not allege specific terms or conditions regarding possessory interest, repayment rights, demands or triggers, that there are no facts supporting Defendants' argument. (Resp. at 9). Dachev and Svilosa should have been aware of the basic legal principles regarding loans of money, it was their burden to plead facts necessary for their claims to survive a motion

to dismiss, and they have failed to do so. It was Plaintiffs' decision not to attach the loan

agreement as an exhibit or plead facts regarding the terms of the agreement, and they should not

benefit by avoiding a valid legal argument against their claim by throwing their hands in the air

and exclaiming the terms of the loan are unknown. This is even more of a reason the Court

should dismiss Dachev and Svilosa's claims for conversion, because Plaintiffs concede they have

alleged facts establishing their right to immediate possession.

Despite Plaintiffs' argument, Defendants are not asserting a fact-based defense at the

pleading stage. Rather, Defendants are taking the facts as alleged in the SAC and applying them

to the applicable law. Defendants are not offering evidence outside the four corners of the SAC,

nor asking the Court to engage in speculation. Dachev and Svilosa based their individual claims

for conversion on the existence of a loan they made to the Foundation which was to be repaid

with money raised from ticket sales to the charity concert. (SAC at ¶15). The basic legal

principles regarding loans dictates that once Dachev and Svilosa loaned the money to the

Foundation they no longer had an interest in the money. Plaintiffs argument that certain terms of

the loan are unknown does not shield their claim from dismissal, it is clearly alleged that the loan

would be paid back from revenue generated by ticket sales to the charity concert. *Id.*

### F. Counts III and IV – Dachev and Svilosa Cannot Bring Claims Under the Illinois Consumer Fraud and Deceptive Business Practices Act

Under the ICFA, a consumer is "any person who purchases or contracts for the purchase

of merchandise not for resale in the ordinary court of his trade or business but for his use or that

of his household." 815 ILCS 505/1(e). In their motion to dismiss, Defendants argued that none of

the Plaintiffs met the definition of a consumer because they purchased, or contracted to purchase,

Defendants' services only to resell those services to the public. (MTD at 7, 13). Further,

Defendants argued that even if the Court were to find that the Foundation met the definition of a

consumer under the ICFA, that Dachev and Svilosa's individual claims must still be dismissed

because they never purchased, or contracted to purchase, Defendants' services. *Id.* at 7.

Specifically, the SAC alleges that the Foundation was the party that engaged and hired

Defendants to secure celebrity musicians to perform at the charity concert. (SAC at ¶14, Exhibit 1 to the SAC). Indeed, it was the Foundation, through its agent, that purportedly discussed with Defendants their role in promoting and obtaining celebrity performances, it was the Foundation that agreed to provide Defendants money to secure the performances, and it was the Foundation that directed its loan proceeds be paid or transferred to Defendants. *Id.* at ¶¶ 14, 25.

Because it was the Foundation, not Dachev or Svilosa, who purchased, or contracted to purchase, Defendants' services, Dachev and Svilosa cannot maintain individual claims under the ICFA. Plaintiffs failed to respond to this argument and therefore conceded the point. *See* Resp. at 12-16; *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to argument results in waiver and a party's silence in response to an argument leads to the conclusion they conceded to point).

## II.     The Second Amended Complaint

In addition to the grounds for dismissing Dachev and Svilosa's individual claims, the SAC is subject to dismissal for its overall failure to state a claim for which relief can be granted.

### A.     Plaintiffs Unjustifiably Relied on Defendants' Alleged Misrepresentations

While generally, determining whether a plaintiff's reliance was reasonable is a question of fact, where only one conclusion can be drawn from the undisputed facts, the question becomes one for the courts to determine and is proper grounds for dismissal under Rule 12(b)(6). *Doe v. Dilling,* 37 Ill. App. 3d 151, 174 (1st Dist. 2006). In their motion to dismiss, Defendants laid out specific facts, which are accepted as true for purposes of this motion, that lead to only one conclusion, that Plaintiffs reliance on Defendants' alleged misrepresentations was not reasonable, and therefore not justified. (MTD at 9-11).

Plaintiffs largely ignore Defendants' argument and instead merely claim that there are no undisputed facts that lead to such a conclusion because Plaintiffs relied on Defendants to tell the truth, and Plaintiffs' experience with a previous fraudulent concert promoter has no bearing on whether their reliance on Defendants' alleged misrepresentations was reasonable. *See* Resp. at 8. The mere allegation that Plaintiffs relied on Defendants to tell the truth is insufficient, especially

in light of the facts pleaded in the SAC showing Plaintiffs reliance was unreasonable.

Indeed, the SAC specifically alleges that after being sent multiple artists engagement agreements and paying the required deposits, Defendants failed to secure any celebrity performances for the concert, and Plaintiffs were forced to cancel the concert. (SAC at ¶¶ 30, 33, 36, 39, 40, 46, 56, 62). According to Plaintiffs, Defendants offered inexplicable excuses for their failure, such as an artist backing out, an agreement falling through, and a deposit being paid to an artist Plaintiffs never requested or authorized. *Id.* at ¶58. Moreover, Plaintiffs also claim that they made multiple requests for an accounting of the Foundations' monies, but those requests were ignored. *Id.* at ¶¶ 70-71. Despite this knowledge, and Plaintiffs ignored Defendants' inability to accomplish the job they were hired to perform, and asked Defendants to organize a second concert. *Id.* at ¶64. Based on these facts, and Plaintiffs' experience with a prior promoter who similarly failed to secure celebrity musicans, Plaintiffs cannot now claim their reliance on Defendants' alleged misrepresentations was reasonable.

**B.      Plaintiffs Cannot Maintain an Claim For Conversion**

While money may be the subject of a claim for conversion, Plaintiffs must demonstrate that the money is capable of being described as a specific chattel, and that the money, at all times, belonged to the Plaintiffs. *Karimi v. 401 N. Wabash Venture, LLC,* 952 N.E. 2d 12778, 1285 (Ill. App. Ct. 1st Dist. 2011). As argued in Defendants' motion to dismiss, Plaintiffs' claims for conversion must be dismissed because once Plaintiffs transferred the money to Defendants, it no longer belonged to Plaintiffs. (MTD at 10-11).

In response, Plaintiffs claim Defendants are asserting contradicting arguments for dismissal of the conversion claims. (Resp. at 10). Specifically, Plaintiffs believe Defendants' argument concerning Dachev and Svilosa's individual claims, that once Dachev and Svilosa loaned money to the Foundation it became the property of the Foundation, contradicts the argument that once the money was transferred to Defendants it no longer belonged to Plaintiffs. *Id.* This argument is simply incorrect and not grounds for denying Defendants' motion.

First, these are not contradictory arguments. According to the SAC, Dachev and Svilosa

loaned money to the Foundation. Once they executed the loan agreement, Dachev and Svilosa lost their interest in the money, as it became the property of the Foundation, and therefore Dachev and Svilosa cannot maintain a claim for conversion. After the loan was made, the Foundation caused the money to be transferred to Defendants, and at that point the money no longer was property of the Foundation, or Dachev and Svilosa. Second, even if these arguments were contradictory, nothing prevents Defendants from presenting alternate grounds for dismissal.

Plaintiffs next claim that because the monies transferred to Defendants to use as deposits is specifically identifiable by date, amount, and which specific artists it was to be used for, that the money is subject to a claim for conversion. (Resp. at 10-11). However, Defendants do not argue that the money is not identifiable, but rather that the money did not belong to Plaintiffs at all times. *See Karimi v. 401 N. Wabash Venture, LLC,* 952 N.E.2d 1278, 1285 (Ill. App. Ct. 1st Dist. 2011). As Defendants previously argued, Dachev and Svilosa gave up their interest and right to the money once they loaned the money to the Foundation. The Foundation, in turn, caused the money to be transferred to Defendants for Defendants to use to secure celebrity musicians. When the Foundation transferred the money to Defendants, the money no longer belonged to the Foundation, it was for Defendants to use and distribute to musicians.

### C. Plaintiffs Cannot Bring Claims Under the Illinois Consumer Fraud and Deceptive Business Practices Act

In their motion to dismiss, Defendants argued that Plaintiffs could not bring claims under the ICFA because they did not meet the statutory definition of a consumer. (MTD at 12-15). Specifically, because Plaintiffs purchased or contracted to purchase Defendants services, not for their personal use, but to resell those services to concert goers, they are not consumers under the ICFA and their claims must be dismissed.[5] *Id.* In support of this argument, Defendants compared *Ivanhoe Financial, Inc. v. Highland Banc Corp*, 2004 WL 2091997 (N.D. IL 2014) to *Ivanhoe*

---

[5] The SAC alleges that Plaintiffs purchased Defendants' services for their own use and that it was not in the ordinary course of Plaintiffs' business to resell Defendants' services. (SAC at ¶¶ 96-98, 109-111). However, these are legal conclusions that the Court need not accept as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Defendants have argued, the allegations of the SAC clearly establish Plaintiffs were not consumers of Defendants' services as they intended to resell those services to concert attendees.

*Financial, Inc. v. Mortgage Essentials*, 2004 WL 856591 (N.D. IL 2014).

Both cases involved mortgage brokers who were alleged to have sold fraudulent services to the plaintiffs in the form of loan applications which contained false information. In *Highland Banc Corp* the ICFA claim was dismissed because the court found the plaintiff was not a consumer of the defendant's services, while in *Mortgage Essentials*, the plaintiff was found to be a consumer of the defendant's services. *See Highland Banc Corp.,* 2004 WL 2091997 at *5; *Mortgage Essential*, 2004 WL 856591 at *2; MTD at 14. The factual distinction between these two cases shows that use of services in merchandise for resale is excluded under the ICFA, and therefore Plaintiffs' ICFA claims should be dismissed.

In *Highland Banc Corp,* the plaintiff purchased defendant's product, in the form of loan applicants, and then resold defendant's product to a third-party in the form of mortgages entered into by the defendant's loan applicants. (MTD at 14); *Highland Banc Corp.,* 2004 WL 2091997 at *5. In *Mortgage Essentials,* the plaintiff purchased the defendant's product, similarly loan applicants, but did not incorporate the applicants in new product, such as mortgages, which was then sold to a third-party. (MTD at 14); *Mortgage Essentials*, 2004 WL 856591 at *2. The distinguishing factor in *Highland Banc Corp.* is the inclusion of the defendant's service, the sale of loan applicants, into a final product, a completed mortgage, that is sold to a third-party.

The reasoning of *Highland Banc Corp* applies directly to the facts of the SAC. The Foundation purchased Defendants' services, securing and booking celebrity musicians, to package into a final product, the charity concert, which the Foundation was to resell to the public through tickets sales. Plaintiffs do not dispute Defendants' analysis of *Highland Banc Corp* and *Mortgage Essentials*. Rather, they attempt to distinguish both cases from the SAC.

First, Plaintiffs argue that unlike the allegations of the SAC in *Highland Banc Corp* and *Mortgage Essentials*, the Plaintiffs actually purchased the Defendant's services, Defendants provided their services, and some of the services were incorporated into a product. (Resp. at 14). However, Plaintiffs offer no support for their argument. The Foundation contracted with Defendants for services which Plaintiffs were going to resell in the form of tickets to the charity

concert. There is no legal authority supporting the proposition that because Defendants' services were never provided or ultimately resold that Plaintiffs meet the definition of a consumer.

Second, Plaintiffs argue that unlike the parties in *Highland Banc Corp* and *Mortgage Essentials*, the relationship between Plaintiffs and Defendants was not "a relationship between sophisticated equals in the same business." *Id.* Again, Plaintiffs offer no legal authority supporting this distinction. Nor have Plaintiffs explained how this distinction affects the analysis or outcome of Defendants' arguments. Moreover, Plaintiffs' claims that they are not sophisticated equals to Defendants, or "sophisticated players in the concert planning or promoting business," are not pleaded in the SAC and none of the allegations of the SAC lead to that conclusion. *Id.* These are facts Plaintiffs only allege, for the first time, in their response, and should not be considered in deciding Defendants' motion.

In a last-ditch effort to avoid dismissal of their ICFA claims, Plaintiffs ask the Court to find a consumer nexus between Defendants' alleged conduct and consumer protection concerns. *Id.* at 15. To state a claim under the ICFA, Plaintiffs must allege it was a consumer of the defendant or allege a nexus with Illinois consumers. *Vulcan Golf, LLC v. Google Inc.,* 552 F. Supp. 2d 752, 777 (N.D. Ill 2008). Because the allegations of the SAC establish Plaintiffs were not consumers, the allegations must allege a nexus to Illinois consumers. To do so, Plaintiffs must allege that the "conduct complained of involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." *Id.*

Plaintiffs argue that the "allegations of the SAC fall squarely within these criteria," because the district court in *Prime Leasing, Inc. v. CMC Lease, Inc.,* found that the fraudulent inducement of another to hand over thousands or millions of dollars to another party can implicate consumer protection concerns. (Resp. at 15). Plaintiffs claim they have alleged a consumer protection concern "substantively identical to the one identified in *Prime Leasing*." *Id.* The problem with this argument is that Plaintiffs have not established what is alleged in the complaint in *Prime Leasing, Inc*. Rather Plaintiffs merely cite the court opinion which does not summarize or cite to specific allegations of the *Prime Leasing, Inc.* complaint. Plaintiffs have

14

simply failed to develop this argument.

Even so, it is clear the allegations of the SAC are insufficient to plead a consumer nexus. First, there are no allegations concerning a nexus with Illinois consumers, as all three Plaintiffs are based in Bulgaria and there are no allegations Plaintiffs have any connection to Illinois, or Defendants' conduct was directed to Illinois consumers. Second, there are no allegations concerning Defendants conduct being directed at the market generally, rather the allegations solely deal with Defendants' alleged fraud on these three Plaintiffs. Third, there are no allegations implicating consumer protection concerns. *See Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.,* 298 Ill. App. 3d 146, 160 (2d Dist. 1998) ("to sufficiently establish an implication of consumer protection concerns, plaintiffs must plead… (1) that their actions were akin to a consumer's actions to establish a link between them and consumers; (2) how defendant's representations regarding their chances of being accepted into defendant's medical school concerned consumers other than themselves; (3) how defendant's particular breach of denying them admission into defendant's medical school involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers."); *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 912 (N.D. Ill. 2012) (same).

## CONCLUSION

WHEREFORE, Defendants respectfully request this Honorable Court dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6).

Respectfully submitted,

/s/ Telly Stefaneas
TELLY STEFANEAS

Telly Stefaneas
Breen & Pugh
53 W. Jackson Blvd., Suite 1215
Chicago, IL 60604
(312) 675-0075
(312) 360-1001

15

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the following document:

**DEFENDANT RICH AMERICA INC., AND
LEONARD GOODRUM'S REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

was served on June 21, 2019, in accordance with Federal Rule of Civil Procedure 5, Local Rule

5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's

system as to ECF filers.

By:     /s/ Robert W. Stanley
        **Robert W. Stanley**